IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS A. SIMONIAN, | ) | |
| | ) | |
| Relator, | ) | No. 10 C 02414 |
| | ) | |
| v. | ) | Hon. Amy J. St. Eve |
| | ) | |
| ALLERGAN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Relator, Thomas A. Simonian, has brought a *qui tam* action against Defendant, Allergan, Inc., alleging that Allergan has violated 35 U.S.C. § 292 by marking certain of its prescription pharmaceutical products with two expired patents, namely U.S. Patent Numbers 4,839,342 ("the '342 patent") and 4,649,047 ("the '047 patent"). (R. 1.) Defendant has filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (R. 19.) On September 2, 2010, the Court granted Allergan's unopposed notice of voluntary withdrawal of the Rule 12(b)(1) portion of the latter's motion to dismiss. (R. 37.) Defendant maintains, however, that the Court must dismiss Simonian's complaint under Rule 12(b)(6) because its allegations fail to satisfy the heightened pleading standards of Rule 9(b). (R. 20 at 11-12.) Defendant further argues that the complaint fails to state a claim because, even accepting as true the allegations that Allergan's product was marked with the expired '342 and '047 patents, the product was also marked with a separate patent that is both valid and unexpired. (*Id.* at 6, 12-13.) Allergan contends that the False Marking Statute's reference to "any unpatented article" requires that the article not currently be subject to a valid patent as a matter of law. (*Id.*) Because the complaint reveals that its

RESTASIS® product line is marked with unexpired U.S. Patent No. 5,474,979 ("the '979 patent"), Defendant submits that the Court should dismiss the lawsuit under Rule 12(b)(6). (*Id.*)

Although the Court agrees with Defendant that false-patent-marking claims sound in fraud, and are therefore subject to the heightened pleading requirements of Rule 9(b), Simonian's complaint satisfies the strictures of that rule. Furthermore, because one violates the False Marking Statute by marking an article with an expired patent regardless of whether the article is also marked by valid patents, the Court denies Allergan's motion to dismiss under Rule 12(b)(6).

## BACKGROUND

On April 19, 2010, Relator filed a complaint alleging that Allergan had falsely marked its RESTASIS® Ophthalmic Emulsion product with the expired '342 and '047 patents. (R. 1.) Simonian alleged that Allergan "is a sophisticated company, that has previously litigated or overseen litigation of patent infringement cases and which regularly prosecutes or oversees patent prosecution." (*Id.* at 11.) He alleged further that Defendant has advertised its RESTASIS® product on its website, in the *New York Times*, and in *Prevention Magazine*. (*Id.* at 5-11.)

On June 21, 2010, Defendant filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6). (R. 19.) The Defendant premised the 12(b)(1) portion of its motion on the argument that Simonian lacked constitutional standing due to his purported failure to plead the fact of injury. In light of the Federal Circuit's August 31, 2010, decision in *Stauffer v. Brooks Bros.*, 619 F.3d 1321 (2010), which foreclosed Allergan's 12(b)(1) argument, the Court granted Defendant's unopposed notice of voluntary withdrawal of its 12(b)(1) portion of its motion to

2

dismiss. (R. 37.) The 12(b)(6) component of Allergan's motion to dismiss remains pending. Allergan argues, first, that the complaint is inadequately pleaded and, second, that the facts, as alleged, foreclose a violation of 35 U.S.C. § 292. For reasons explained below, the Court denies Defendant's motion.[1]

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under the federal notice-pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter,

---

[1] The instant case is one of many lawsuits that Simonian has brought in this District against various companies that he alleges have violated 35 U.S.C. § 292. *See, e.g.*, *Simonian v. Allergan, Inc.*, No. 10-CV-02414 (N.D. Ill.); *Simonian v. Amgen, Inc.*, 10-CV-01540 (N.D. Ill.); *Simonian v. Adv. Vision Research, Inc.*, 10-CV-01310 (N.D. Ill.); *Simonian v. Oreck Corp. et al.*, 10-CV-1224; *Simonian v. Irwin Indus. Tool Co.*, 10-CV-1260 (N.D. Ill.); *Simonian v. Cisco Sys., Inc.*, No. 10-CV-1306 (N.D. Ill.).

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (holding that the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009) (holding that the court construes complaints in the light most favorable to the plaintiff, drawing all possible inferences in the plaintiff's favor).

Beyond the requirements of Rule 12(b)(6), Rule 9(b) requires that all allegations of fraud be "state[d] with particularity," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "The rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotations omitted); *see also United States ex. rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) (holding that alleging fraud with particularity "means the who, what, when, where, and how: the first paragraph of any newspaper story") (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

**ANALYSIS**

I.  **The Complaint's Allegations Are Sufficiently Detailed to Meet the Pleading Requirements of Rule 9(b)**

For the same reasons explained in the Court's recent opinion in *Blistex*, Allergan is

correct that an alleged violation of 35 U.S.C. § 292 sounds in fraud, thus triggering the heightened-pleading standards of Rule 9(b). *Simonian v. Blistex, Inc.*, No. 10-CV-01201, 2010 WL 4539450, at *5-6 (N.D. Ill. Nov. 3, 2010). In its motion to dismiss, Defendant criticizes the complaint's "bare" allegations, which are based upon "information and belief." (R. 20 at 13-14.) Factual allegations that are prefaced upon "information and belief," however, do not necessarily fall afoul of Rule 9(b). *See, e.g.*, *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) ("Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based."); *accord Itex, Inc. v. Westex, Inc.*, No. 05-CV-6110, 2010 WL 2901793, at *2 (N.D. Ill. July 21, 2010); *Civix-DDI, L.L.C. v. Hotels.com, L.P.*, 711 F. Supp. 2d 839, 844 (N.D. Ill. 2010).

Defendant does not contend that the complaint falls short of the pleading requirements of Rule 9(b) due to a failure to plead "the who, what, when, where, and how" of the alleged fraud. *See Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 401 (7th Cir. 2009) (quoting *DiLeo*, 901 F.2d at 627 (7th Cir. 1990)). Instead, Allergan focuses on Relator's allegation that it falsely marked its RESTASIS® product line "with the express intent of 'deceiving the public into believing that something contained in or embodied in the product is covered by or protected by the expired' patents." (R. 20 at 13 (quoting R. 1 at ¶ 38).) Allergan submits that this allegation fails to plead the necessary deceptive intent. (R. 20 at 13-14.) Rule 9(b) makes clear, however, that intent may be alleged generally. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see also Simonian v. Oreck Corp.*, 10-CV-1224, 2010 WL 3385465, at *4 (N.D. Ill. Aug. 23, 2010) ("Simonian has alleged deceptive intent

5

generally, which conforms to the requirements of Rule 9(b).").

Simonian's allegations of deceptive intent are sufficient under Rule 9(b), given that those allegations need only be alleged generally. Allergan argues its alleged scheme to deceive the public "stands no rational chance of success" because the "'public' comprises [sic] sophisticated pharmaceutical competitors, who [sic], Plaintiff alleges, without a shred of support, might be 'discourag[ed] or deter[red] from commercializing competing products.'" (R. 20 at 13.) Defendant's argument fails. A valid and enforceable patent generates a zone of exclusivity within which prospective competitors, regardless of their sophistication, cannot operate.[2] A company's false marking of a product line sends a signal to its competitors, both actual and potential, that that line is subject to intellectual-property protection. Such false signals constitute an impediment to competition, even when they are directed at experienced, business-savvy, and knowledgeable rivals. *See, e.g.*, Christopher R. Leslie, *Patents of Damocles*, 83 IND. L.J. 133, 146-47 (2008) ("A dominant firm's announcement of its patent will often impose costs on actual and prospective competitors who feel compelled to investigation the scope and validity of the touted patent. In many cases, a patent is invalid for a reason that potential competitors do not know but could possibly find out. The issue is 'at what cost?' Search costs can be high."). As the Federal Circuit has observed, "false marking statutes exist to give the public notice of patent rights" and that "[a]cts of false marking deter innovation and stifle competition in the

---

[2] Of course, sufficiently sophisticated competitors may, in some circumstances, be able to invent around a patent's claims or (more rarely) avoid them through the reverse doctrine of equivalents. *See WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999) (invent around); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608-09 (1950) (reverse doctrine of equivalents). Such invent around and further innovation, however, obviously require the allotment of time, capital, and ingenuity, and thus doubtless constitute an impediment to competition that would not be present but for the relevant patent.

marketplace." *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1302 (Fed. Cir. 2009). The court further remarked:

> If an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market. False marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement. False marking can also cause unnecececessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

*Id.* at 1303.

These concerns apply to sophisticated competitors as much as they do to inexperienced or naive ones. There is therefore no force to Allergan's rhetorical query whether "a sophisticated pharmaceutical competitor might make a decision to act or not act in competition with a product based on a blind reading of the marking." (R. 20 at 13.) *Forest Group* makes clear that the Federal Circuit does not share Allergan's skepticism. *Forest Group*, 590 F.3d at 1303. Even if one were convinced that "sophisticated" competitors would never be dissuaded by false marking, it is quite clear that Congress did not hold that view. The False Marking Statute makes no reference to the proclivity of a particular instance of false marking to negatively affect competition, and does not purport to exempt false markings that would not deter competitors in a given case. *See* 35 U.S.C. § 292. For these reasons, the Complaint's allegations are sufficiently pleaded and so the Court will not dismiss the complaint on this ground.

**II.  The Fact that Allergan's RESTASIS® Product Line Is the Subject of a Valid Patent Does Not Mean that that Line Cannot Constitute an "Unpatented Article" for the Purpose of 35 U.S.C. § 292**

The complaint reveals that Allergan's RESTASIS® product line is marked with the '979 patent. (R. 1.) Pointing this out, Defendant contends that Simonian's complaint is "doom[ed]"

7

for two reasons. (R. 29 at 2.) First, only an "unpatented article" can be the subject of liability-inducing false marking under the False Marking Statute. (*Id.*) Second, given the presence of the '979 patent, Simonian does not and cannot allege "a rational factual predicate for an intent to deceive." (*Id.*) Neither of these assertions is availing, and so the Court denies Allergan's motion to dismiss.

The Federal Circuit has opined that the False Marking Statute's reference to "an unpatented article" "means that the article in question is not covered by at least one claim of each patent with which the article is marked." *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). Allergan concedes that the Federal Circuit has so opined, but characterizes the quoted remarks as being merely *dicta* that the Court can, and should, ignore. (R. 20 at 12-13 n.5.) The Court declines the invitation.

In the first place, Defendant points to no case law supporting its contention that one cannot violate 35 U.S.C. § 292 by marking a product with one or more expired products, as long as at least one valid and enforceable patent covers the product. (R. 20 at *passim*; R. 29 at *passim*.) Even if the Federal Circuit's view in Clontech were *dicta*, those comments would nevertheless be persuasive. *Hynix Semiconductor, Inc. v. Rambus, Inc.*, No. 00-CV-20905, 2004 WL 2610012, at *6 (N.D. Cal. Nov. 15, 2004) ("Even assuming that the Federal Circuit's construction is *dicta*, the Federal Circuit's reasoning remains applicable to the present matter, and the reasoning is persuasive.").

Second, other courts have adopted the reasoning expressed by the Federal Circuit in *Clontech*. *See Brinkmeier v. Graco Children's Prods., Inc.*, 684 F. Supp. 2d 548, 551 (D. Del. 2010) ("The Court rejects Defendant's contention that no actionable mismarking can occur if the

8

product at issue is covered by at least one claim of one of the patents listed."); *Adv. Cartridge Techs., L.L.C. v. Lexmark Int'l, Inc.*, No. 10-CV-486, 2010 WL 3222100, at *1 (M.D. Fla. Aug. 16, 2010) ("For the purposes of determining liability under Section 292, an article covered by an expired patent is 'unpatented.'"); *DP Wagner Mfg., Inc. v. Pro Patch Sys., Inc.*, No. 04-CV-4610, 2006 WL 1766182, at *4 (S.D. Tex. June 19, 2006) (quoting *Clontech*, 406 F.3d at 1352).

Third, Defendant may be correct that the plain and unambiguous language of the False Marking Statute requires that "[o]nly an unpatented article can be falsely marked." (R. 29 at 5.) This observation, however, does not answer the critical question of what an "unpatented article" means for the purpose of the statute. Section 292 provides, in relevant part, that "[w]hoever marks upon . . . in connection with any unpatented article, the word 'patent' . . . for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense." 35 U.S.C. § 292(a). Contrary to Defendant's argument, it is not clear that "unpatented article," as used in Section 292, refers to the article being free of any and all patents. An alternative—and, indeed, more plausible—reading is that an "unpatented article" is one that is not actually subject to the patent with which it is marked.

The former interpretation, which Allergan urges the Court to adopt, would allow a company that sells a product that is covered by a single valid patent to mark that product with as many expired patents as it desired, free from liability under the False Marking Statute. Congress could not have interpreted "such a bizarre result." *Abbott v. United States*, 131 S. Ct. 18 (2010) (quoting *United States v. Abbott*, 574 F.3d 203, 209 (3d Cir. 2009)). Allergan nevertheless argues that its reading of the False Marking Statute is supported by "a compelling logic," which is that "patented articles are not in the public domain, so a 'false marking' on an otherwise

9

patented article does not impinge on any public right to freely use it." (*Id.*) This argument is foreclosed by the Federal Circuit's holding in *Forest Group*, which is recounted above. *Forest Group*, 590 F.3d at 1303. Furthermore, a product that is not covered by any patents may be in the public domain, such that the addition of a single false marking of patent protection carries a significant marginal cost to society in the form of potentially excluding competitors, raising their costs, and facilitating supracompetitive pricing on the part of the patentee. *See, e.g.*, *id.* It is not the case, however, that falsely marking a product that is already covered by a single patent with one or more expired patents carries a marginal cost to society of zero. When faced with several patents covering a product, rather than just one, competitors may be deterred from manufacturing a noninfringinging substitute product. It is axiomatic that it is more difficult to design around multiple patents, rather than just one. *See, e.g.*, Richard J. Gilbert, *Antitrust for Patent Pools: A Century of Policy Evolution*, 2004 STAN. TECH. L. REV. 3, ¶ 63 (observing that "a combination of blocking patents might make it more difficult for a firm to 'invent around' the patents, decreasing competition.").

## CONCLUSION

For the preceding reasons, the Court denies Defendant's motion to dismiss.


Dated: November 30, 2010

                                        **ENTERED**

                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**