**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS A. SIMONIAN, | ) | |
| | ) | |
| Relator, | ) | No. 10 C 02414 |
| | ) | |
| v. | ) | Hon. Amy J. St. Eve |
| | ) | |
| ALLERGAN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Relator, Thomas A. Simonian, has brought a *qui tam* action against Defendant, Allergan, Inc., alleging that Allergan has violated 35 U.S.C. § 292 by marking certain of its prescription pharmaceutical products with two expired patents, namely U.S. Patent Numbers 4,839,342 ("the '342 patent") and 4,649,047 ("the '047 patent"). (R. 1.) On March 4, 2011, Allergan filed a motion for judgment on the pleadings, arguing that Section 292(b) of the false-marking statute is unconstitutional in light of the "Take Care" clause of Article II of the U.S. Constitution. (R. 57.) Allergan argues that, because the Executive Branch lacks sufficient control over *qui tam* actions that relators bring under Section 292(b), that provision of the false-marking statute is unconstitutional. (R. 58.) For reasons explained below, the Court disagrees and denies Defendant's motion for judgment on the pleadings.

### **BACKGROUND**

On April 19, 2010, Relator filed a complaint alleging that Allergan had falsely marked its RESTASIS® Ophthalmic Emulsion product with the expired '342 and '047 patents. (R. 1.) Simonian alleged that Allergan "is a sophisticated company, that has previously litigated or

overseen litigation of patent infringement cases and which regularly prosecutes or oversees patent prosecution." (*Id.* at 11.) He alleged further that Defendant has advertised its RESTASIS® product on its website, in the *New York Times*, and in *Prevention Magazine*. (*Id.* at 5-11.)

Allergan subsequently filed a motion to dismiss, which this Court denied on November 30, 2010. (R. 45.) In so ruling, the Court found that the complaint met the pleading requirements of Federal Rule of Civil Procedure 9(b) and held that a company can violate the false-marking statute by marking an article with an expired patent, even if it also marked that article with valid patents. (*Id.*)

On March 4, 2011, Allergan filed the present motion for judgment on the pleadings. (R. 57.) It argues that the *qui tam* provision of the false-marking statute contravenes the "Take Care" Clause of Article II of the U.S. Constitution because the statute neither requires nor allows governmental oversight. (*Id.*; R. 58.) In support of its motion, Allergan appeals to a recent decision in the Northern District of Ohio, which found the *qui tam* provision of the false-marking statute to be unconstitutional. (R. 58 at 5, 10-12.) Also on March 4, 2011, Allergan filed a notice of constitutional question pursuant to Federal Rule of Civil Procedure 5.1, stating that it would serve that notice on the Attorney General of the United States concurrently with the filing. (R. 60.) For reasons explained below, the Court denies Defendant's motion for judgment on the pleadings.

**LEGAL STANDARD**

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) 'is designed to provide a means of disposing of cases when the material facts are not in dispute and

2

a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court may take judicial notice.'" *Archer Daniels Midland Co. v. Burlington Ins. Co. Grp., Inc.*, No. 10-CV-1533, 2011 WL 1196894, at *2 (N.D. Ill. Mar. 29, 2011) (quoting *Cin. Ins. Co. v. Contemporary Distrib., Inc.*, No. 09-CV-2250, 2010 WL 338943, at *2 (N.D. Ill. Jan. 26, 2010)). The same legal standard that applies to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) applies to motions under Rule 12(c). *See Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). To survive a Rule 12(c) motion, then, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the speculative level, assuming that all well-pleaded allegations in the complaint are true. *See Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007); *see also Wozniak v. Argonne Nat'l Lab.*, No. 09-CV-7702, 2010 WL 3958426, at *3 (N.D. Ill. Oct. 1, 2010). The Court accepts as true all-pleaded facts alleged by the plaintiff, as well as all reasonable inferences that arise from the same. *See Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## ANALYSIS

**Section 292(b) of the False-Marking Statute Is Constitutional**

The U.S. Constitution provides that the President "shall take Care that the Laws be faithfully executed." U.S. CONST. Art. II, § 3. Allergan observes that, by virtue of the Take Care Clause, Congress can transfer the Executive Branch's law-enforcement authority only if the Executive retains "sufficient control . . . to ensure that the President is able to perform his constitutionally assigned duties[.]" (R. 58 at 7-8 (quoting *Morrison v. Olson*, 487 U.S. 654, 696 (1988).) Defendant submits that the *qui tam* provision of the false-marking statute, Section 292(b), fails this requirement and is thus unconstitutional under Article II, Section 3 of the

3

Constitution.[1] (*Id.* at 5.) Section 292(b) of that statute provides that "[a]ny person may sue for the penalty, in which event one-half shall go the person suing and the other to the use of the United States." 35 U.S.C. § 292(b).

In arguing that Section 292(b) is unconstitutional, Allergan places central reliance on *Morrison v. Olson*, 487 U.S. 654 (1988). (R. 58 at 8-9.) There, the Supreme Court found that the independent-counsel provisions of the Ethics in Government Act of 1978 did not impermissibly undermine the powers of the Executive Branch because it gave the Attorney General (and hence the President) "sufficient control over the independent counsel to ensure that the President is able to perform his constitutionally assigned duties." 487 U.S. 654, 693-96 (1988). It reached this conclusion despite acknowledging that, under the Act, "[t]he Attorney General is not allowed to appoint the individual of his choice; he does not determine the counsel's jurisdiction; and his power to remove a counsel is limited." *Id.* Nevertheless, the Supreme Court held that the Attorney General retained sufficient control to render the Act constitutional, observing:

> the Attorney General retains the power to remove the counsel for 'good cause,' a power that . . . provides the Executive with substantial ability to ensure that the laws are 'faithfully executed' by an independent counsel. No independent counsel may be appointed without a specific request by the Attorney General, and the Attorney General's decision not to request appointment if he finds 'no reasonable grounds to believe that further investigation is warranted' is committed to his unreviewable discretion. The Act thus gives the Executive a degree of control over the power to initiate an investigation by the independent counsel. In addition, the jurisdiction of the independent counsel is defined with

---

[1] The Court will address Allergan's argument that the false-marking statute is unconstitutional in light of the fact that it has already ruled on Allergan's motion to dismiss, and discerns no manner in which to address the instant motion without tackling the constitutional issue. (R. 45.) *See Nw. Austin Mun Util. Dist. No. One v. Holder*, 129 S. Ct. 2504, 2513 (2009) (holding that courts should reach constitutional issues last).

4

> reference to the facts submitted by the Attorney General, and once a counsel is appointed, the Act requires that the counsel abide by Justice Department policy unless it is not 'possible' to do so.

*Id.*

Allergan does not argue that *qui tam* actions, which have a long history in U.S. law, are unconstitutional. *See generally* Martin H. Redish, *Private Contingent Fee Lawyers and Public Power: Constitutional and Political Implications*, 18 SUP. CT. ECON. REV. 77 (2010) ("*Qui tam* actions are deemed legitimate today, despite the serious questions of separation-of-powers under both Articles I and II, largely because they have existed for such a long period in English and American Practice."). Indeed, Allergan points out that various U.S. Courts of Appeals have upheld such actions under the False Claims Act ("FCA"). (*Id.* at 9 (citing cases).) Instead, Defendant explores material features of *qui tam* actions under the FCA that, Allergan submits, are essential to their constitutionality, and then points out that these features are absent under the false-marking statute. (*Id.* at 9-10.)

Specifically, Allergan observes that, under the FCA, the Executive Branch (1) has the right to be notified before the defendant is served; (2) has the right to intervene as of right within 60 days of the commencement of the action, or for "good cause" thereafter; (3) is obliged to take primary responsibility for prosecuting the action if it intervenes, and the right not to be bound by the relator's actions; (4) has the right to seek dismissal or settlement over the relator's objection, as well as the right to prevent dismissal by the relator; (5) has the right to seek to limit the relator's discovery and participation in the lawsuit; and (6) has the right to be served with all papers even if it chooses not to intervene. (*Id.* at 10.)

With respect to the false-marking statute, Allergan submits first that the act does not require that the court or parties serve the Executive Branch with a complaint or any other

relevant pleadings. (R. 58 at 11.) Defendant argues that 35 U.S.C. § 290, which requires the district-court clerk to give notice to the Director of the U.S. Patent and Trademark Office ("PTO") after the filing of any type of patent action, is generic and "does not provide the government with sufficient notice[.]" (*Id.*) Allergan further argues that, "[e]ven if the proper government authority actually receives notice . . ., the case likely will have settled before government involvement given that qui tam relators are generally interested in receiving a quick award." (*Id.*) Such an eventuality, Defendant submits, would result in the doctrine of res judicata binding the government from bringing its own suit. (*Id.*) Allergan further contends that "the government does not have the right to object to a voluntary dismissal or require dismissal or settlement over the relator's objections. The relator can also settle the case without any involvement or approval from the Department of Justice. Nor does the government have the right to limit the relator's participation in the case or the scope of the discovery. Further . . . the False Marking Statute does not provide the government with any right to intervene." (*Id.* at 11-12.)

Defendant correctly points out that the FCA bears a number of provisions giving the Executive Branch certain express rights over the conduct of *qui tam* actions that the false-marking statute does not correct. Allergan mistakenly assumes, however, that the FCA resides at the floor of constitutional adequacy, such that any statute that authorizes *qui tam* actions but does not provide the full panoply of express rights to the Executive Branch contained in the FCA necessarily runs afoul of Article II, Section 3. The Court concludes that Section 292(b) of the false-marking statute is constitutional.

In support of its argument to the contrary, Allergan can point only to a single decision, in

which the Northern District of Ohio held that "the qui tam provision of the False Marking Statute, 35 U.S.C. § 292(b) is unconstitutional under the Take Care Clause of the United States Constitution, U.S. Const. Art. II, § 3." *Unique Prod. Solutions, Ltd. v. Hy-Grade Valve, Inc.*, -- F. Supp. 2d --, 2011 WL 649998 (N.D. Ohio Feb. 23, 2011), *reaff'd on reconsideration*, No. 10-CV-1912, 2011 WL 924341 (N.D. Ohio Mar. 14, 2011).

In reaffirming its prior order, the Northern District of Ohio observed that the false-marking statute is confusing as to whether it is a criminal, civil, or criminal-civil hybrid. *Unique Prod. Solutions*, 2011 WL 924341, at *3. Remarking that the classification of the statute was in any event academic, the district court held that the statute is unconstitutional under the sufficient-control test espoused by *Morrison*. *Id.* The court then concluded:

> [T]he danger of the privatization of law enforcement is greatly exacerbated by the way the False Marking Statute fine is computed. The defendant pays a fine of $500 per falsely marked item. This fine likely bears no relationship to the gain to the defendant or the harm to competition. If the false mark is on one million widgets that sell for $10 per widget, the defendant faces a fine of 500 million dollars for 10 million dollars in sales that likely generated much less in profit. The relator controls the settlement process and keeps half of the money. In a False Claims Act *qui tam* case, the recovery is not a fine at all, but is the actual economic harm to the United States, typically in a procurement context. One hundred percent of the recovery goes to the United tates and the *qui tam* relator is eligible for a portion of the recovery, up to twenty-five percent if the government proceeds with the action and up to thirty percent if the government does not proceed with the action. 31 U.S.C. § 3730(d). The case may not be settled without government approval.

*Id.* at 4.

*Unique Product Solutions* is contrary to the overwhelming weight of case law, which holds that Section 292(b) is constitutional. *See Ford v. Hubbell, Inc.*, No. 10-CV-513, 2011 WL 1259707, at *3 (S.D. Ill. Mar. 31, 2011); *Luka v. The Procter & Gamble Co.*, No. 10-CV-2511, 2011 WL 1118689, at *5-8 (N.D. Ill. Mar. 28, 2011); *Pub. Patent Found., Inc. v.*

7

*GlaxoSmithKline Consumer, Healthcare, L.P.*, No. 09-CV-5881, 2011 WL 1142917, at *4 (S.D.N.Y. Mar. 22, 2011); *Hy Cite Corp. v. Regal Ware, Inc.*, No. 10-CV-168, 2011 WL 1206768, at *4 (W.D. Wis. Mar. 15, 2011); *Shizzle Pop, L.L.C. v. Wham-O, Inc.*, No. 10-CV-3491, 2010 WL 3063066, at * 3 (C.D. Cal. Aug. 2, 2010); *Zojo Solutions, Inc. v. Stanley Works*, 712 F. Supp. 2d 756, 758 (N.D. Ill. 2010); *Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714, 726-28 (E.D. Va. 2009).

Consistent with these decisions, the Court finds that Section 292(b) of the false-marking statute is constitutional. In the first place, the direct-control test espoused by the Supreme Court in *Morrison* does not apply to the same degree in this setting, which involves a civil action and thus requires a lesser degree of governmental control. *Accord Luka*, 2011 WL 1118689, at *7 ("[T]he fact that section 292 is a criminal statute does not make a qui tam suit under section 292(b) 'a criminal action.' . . . [T]he better view of the false marking statute is that it is a criminal statute with a parallel civil enforcement mechanism. A qui tam suit under section 292(b) is a civil action, not a criminal action. That is why . . . such suits are not properly considered 'criminal actions' the pursuit of which cannot properly be delegated to a private litigant due to the absence of control mechanism of the sort the Supreme Court considered in *Morrison*.") (citations omitted); *see also Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 755 (5th Cir. 2001) (en banc) ("*Morrison*, although it examined similar constitutional questions with regard to the Executive's duties under Article II, is not relevant to the present discussion of qui tam relators, which invokes civil suits filed by private plaintiffs[.]").

Furthermore, the government maintains a sufficient level of control over *qui tam* actions brought under Section 292(b). *Cf., e.g.*, *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 99-

8

100 (2d Cir. 2009) (finding that the Medicare Secondary Payer statute does not authorize a private party to bring a *qui tam* action, explaining that the statute "employs none of the safeguards" associated with such actions under the FCA, noting that, "[s]hould a private party be allowed to bring a qui tam action under the MSP, then, its actions would be circumscribed by no limitations other than those imposed on all litigants in any civil action," and although recognizing that 35 U.S.C. § 292(b) "may not contain" the procedural safeguards found in the FCA, nonetheless concluding that "we find it exceedingly unlikely that Congress would create such a broad and unlimited cause of action . . . without providing the Government without any means of retaining effective control or even awareness of the ongoing litigation").

First, the law obliges the district-court clerk to apprise the Director of the PTO—a member of the Executive Branch—"of an action under" Title 35 of the U.S. Code. 35 U.S.C. § 290. Such notice must include, as far as known, the names and addresses of the parties, the name of the inventor, and the designating number of the patent upon which the relator has brought the action. *Id.* A *qui tam* action for false marking arises under Title 35, and so the Court determines that, contrary to Allergan's argument, the Executive Branch receives notice of *qui tam* false-marking claims.

In addition, the government may request intervention in false-marking cases. *See* Fed. R. Civ. P. 24(b)(2). Moreover, in the event that the government intervenes, the relator may not voluntarily dismiss the case without the government's agreeing to stipulate to the same. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii). Finally, it bears noting that, "if the Federal Circuit had perceived that the statute posed a [Take Care Clause] problem, it would have . . . raise[d] and address[ed] that issue sua sponte." *Zojo Solutions*, 2010 WL 1912650, at *2.

9

## CONCLUSION

For the preceding reasons, the Court denies Defendant's motion for judgment on the pleadings.

Dated: April 28, 2011

                                          **ENTERED**

                                          _____
                                          **AMY J. ST. EVE**
                                          **United States District Court Judge**